# ECF TRANSCRIPTION SHEET



**ANDREW J. PECK**
**UNITED STATES MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1370
New York, N.Y. 10007-1312

Fax No.:        (212) 805-7933
Telephone No.:  (212) 805-0036

**Dated:** February 23, 2017                                      **Total Number of Pages:**

**MEMO ENDORSED:**

The briefing schedule on page 3 is approved.

Copies to:   All Counsel (ECF)
             Roemer (mail)
             Judge Castel

**Buckley Sandler LLP**

Andrew W. Schilling
Partner
1133 Avenue of the Americas, Suite 3100
New York, NY 10036
t 212.600.2330
aschilling@buckleysandler.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 2/23/17

February 22, 2017

**MEMO ENDORSED**
The briefing schedule is approved.

SO ORDERED:

Hon. Andrew J. Peck
United States Magistrate Judge

Yippee! Copies to Roemer & pro se Office

**By Electronic Filing**

The Honorable P. Kevin Castel
United States District Court for the Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

RE:   Roemer v. Attorney Grievance Committee, et al.,
      No. 17 Civ. 703 (SDNY)

Dear Judge Castel:

We represent defendants Jane E. Booth and Lee C. Bollinger (the "Individual Defendants") in this action. We respectfully submit this letter to request that the Court dismiss this action *sua sponte* as against the Individual Defendants as frivolous. In the alternative, in accordance with Rule 4(A)(1) of Your Honor's Individual Practices, we respectfully request that the Court approve a briefing schedule for our anticipated motion to dismiss.

There is no conference scheduled in this matter, although *pro se* plaintiff David Roemer has requested a conference by letter to the Court dated February 18, 2017, for the stated purpose of "giv[ing] this court a learner-centered lesson on the arguments for God's existence."

**I.   Background**

This is a *pro se* lawsuit brought by David Roemer, a retired high school teacher with no affiliation with Columbia University. For the past several months, Mr. Roemer has been seeking permission from Columbia to present a lecture to Columbia students and faculty on "the arguments for God's existence." Compl. ¶ 12. A copy of the Amended Complaint is enclosed for the Court's reference as Exhibit A. When his repeated requests to give his lecture were not granted, plaintiff escalated the issue to several Columbia staff and administrators, including Lee Bollinger, the President of the University. According to the Complaint, Mr. Roemer emailed defendant Mr. Bollinger on September 22, 2016, "criticizing the staff of the Department of Public Safety for statements made in Low Library." *Id.* ¶ 5. A copy of that email is attached for the Court's reference as Exhibit B.

The Complaint does not allege any action taken by Mr. Bollinger in response to plaintiff or his email, but alleges that Ms. Booth, the University's General Counsel, "sent plaintiff a letter threatening legal action if the plaintiff contacted any students or faculty

The Honorable P. Kevin Castel
Page 2 of 3

of Columbia U. about the proposed lecture/lesson." ¶ 6. A copy of that letter is attached for the Court's reference as Exhibit C. As the Court will see, the letter does not in fact threaten legal action, but rather requests that plaintiff "cease communicating with members of the Columbia community," and advises plaintiff that further contact could be seen as harassment. That letter followed prior, unsuccessful efforts by the University's Department of Public Safety, orally and in writing, to dissuade plaintiff from continuing to contact University students and staff about his proposed offer to give a lecture. All of these efforts have been unsuccessful at deterring Mr. Roemer.

To the contrary, Mr. Roemer has chosen to escalate the confrontation. First, five days after Ms. Booth requested that Mr. Roemer stop contacting members of the Columbia community, Mr. Roemer filed a baseless ethics complaint against Ms. Booth with the Attorney Grievance Committee. The Committee dismissed his complaint in January 2017 for failing to demonstrate any violation of the rules of professional conduct. Compl. ¶ 7.

Now Mr. Roemer has now taken his efforts a step further, suing the Attorney Grievance Committee and Ms. Booth in this action. He alleges that "defendants are unlawfully promoting this religion [i.e., humanism] by using the New York State Unified Court System to prevent the plaintiff from contacting the Columbia U. Community about the arguments for God's existence." Compl. 12. As relief, the Complaint seeks "an injunction to end the deprivation of [his] constitutional right to free speech and violations of the Establishment Clause." Compl. ¶ 3. Although Mr. Roemer was advised by undersigned counsel that there was no legal basis for his suit against Ms. Booth, Mr. Roemer declined to withdraw the suit and instead filed an amended complaint adding Mr. Bollinger as a defendant, again without any basis in fact or law.

## II.   Request that the Court Dismiss the Complaint Sua Sponte

We respectfully submit that the Court should dismiss the Complaint *sua sponte* as frivolous. As plaintiff has been advised, he cannot sue private actors such as Ms. Booth and Mr. Bollinger for violating the First Amendment absent some factual basis to impute their conduct to the state. There is no such basis, and none is alleged in the Complaint.

It is axiomatic that the United States Constitution restrains the actions of the state, not of private persons. *See Johnson v. City of New York*, 669 F. Supp. 2d 444, 450 (S.D.N.Y. 2009) (dismissing former university student's constitutional claims against private university employees). Accordingly, to allege a violation of his First Amendment Rights, plaintiff must "demonstrate that the person who caused the deprivation of [a federal] right was either a state actor or acted under color of state law." *Milton v. Alverez*, No. 04-CV-8265 (SAS), 2005 WL 1705523, at *3 (S.D.N.Y. 2005). Here, the Individual defendants are employees of Columbia University; they are not state employees or state actors. *See id.* ("Columbia University and its employees are not state actors"); *Mitchell v. New York Univ.*, 12 N.Y.S.3d 30 (1st Dep't 2015) ("Neither private universities nor their employees are 'state actors' for the purpose of constitutional claims, including claims alleging violation of the right to free speech."). To state a claim here, plaintiff at the very least would need to plausibly allege "a sufficiently high level of

The Honorable P. Kevin Castel
Page 3 of 3

entanglement between the state and the private actor such that the latter can be considered the state itself." *Milton*, 2005 WL 1705523 at *3. The Complaint fails to allege any such "entanglement," and there would be no basis to do so. To the extent plaintiff is relying on the fact that Ms. Booth is an attorney licensed by the state, it is well settled that private attorneys are not "state actors." *See Licari v. Voog*, 374 F. App'x. 230, 231 (2d Cir. 2010) ("[P]rivate attorneys—even if the attorney was court appointed—are not state actors for the purposes of § 1983 claims. Accordingly, a suit alleging that Voog violated Licari's rights under federal law is frivolous"). Nor is there any allegation that the State of New York participated in any way in any action by the University regarding Mr. Roemer. Rather, Mr. Roemer apparently has named the Attorney Grievance Committee as a defendant solely because it dismissed his ethics complaint against Ms. Booth.

Accordingly, Mr. Roemer's suit against the Individual Defendants is frivolous and should be dismissed *sua sponte* and without leave to replead. *See Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (per curiam) (holding that "district courts may dismiss a frivolous complaint *sua sponte*); *Chen v. City of New York*, 622 F. App'x. 66 (2d Cir. 2015) (affirming *sua sponte* dismissal of *pro se* complaint without leave to replead, where adding Columbia employees as defendants would be futile "because they are not state actors").

V.  **Alternatively, the Individual Defendants Request Approval of a Briefing Schedule for Their Motion to Dismiss**

If the Court declines to dismiss the Complaint *sua sponte*, then the Individual Defendants respectfully request that, in accordance with Your Honor's Individual Rules, the Court approving a briefing schedule for a motion to dismiss. The Individual Defendants propose that defendants file their motion by March 10; that plaintiff file any opposition by March 31; and that plaintiff file any reply by April 7.

*OK*

\* \* \* \*

For these reasons, the Individual Defendants respectfully request that the Court dismiss the Complaint *sua sponte*. In the alternative, we respectfully request that the Court approve the foregoing briefing schedule. Thank you for your consideration of this matter.

Respectfully submitted,

Andrew W. Schilling

cc:   **By Electronic Filing**
      Mr. David Roemer

      **By Electronic Mail**
      New York State Attorney Grievance Committee

# EXHIBIT A

THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

DAVID ROEMER,  )
)
Plaintiff  )
)
-against-  )
)
ATTORNEY GRIEVANCE COMMITTEE  )
)
and  ) AMENDED COMPLAINT
) 17-cv-000703-PKC
JANE E. BOOTH  )
)
and  )
)
LEE C. BOLLINGER,  )
)
Defendants.  )

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/13/17

2017 FEB 13 AM 10:23
RECEIVED SDNY PRO SE OFFICE
S.D. OF N.Y.

1) At all times, herein mentioned, the plaintiff is a resident of Brooklyn, New York.

2) The Attorney Grievance Committee of the Supreme Court Appellate Division has an office at 61 Broadway, 2nd Fl., NY, NY 10006. Jane E. Booth, General Counsel of Columbia U., and has an office at 412 Low Library and Lee Bollinger, President of Columbia U., has an office at 202 Low Library (535 West 116th St., NY, NY 10027).

3) The jurisdiction of this court is invoked pursuant to the 1st and 14th amendment to the Constitution of the United States of America. The plaintiff seeks an injunction to end the deprivation of the plaintiff's constitutional right to free speech and violations of the Establishment Clause.

4) On 9/15/16, the plaintiff sent an email to the University Chaplain of Columbia U. with an offer to give a lecture/lesson on the arguments for God's existence.

5) On 9/22/16, the plaintiff sent an email to Lee Bollinger criticizing the staff of the Department of Public Safety for statements made in a meeting in the Low Library. The plaintiff mailed a copy of the email to Jane Booth with a certificate of mailing.

6) On 10/13/16, Jane Booth sent the plaintiff a letter threatening legal action if the plaintiff contacted any students or faculty of Columbia U. about the proposed lecture/lesson.

7) On 10/18/16, the plaintiff filed an ethics complaint against Jane Booth with the Attorney Grievance Committee. On 1/5/17, the Attorney Grievance Committee sent the plaintiff a letter stating that the plaintiff's exhibits and complaint failed to indicate any violation of the New York Rules of Professional Conduct. On 2/7/17, the Attorney Grievance Committee sent the plaintiff a letter supporting the letter of 1/5/17.

8) On 1/11/17, the plaintiff sent an email to Jane Booth giving reasons why the proposed lecture/lesson had social value why Jane Booth's threats violated the academic freedom of the Columbia U. community. [1 and 2]

9) On 1/18/17, the plaintiff sent an email to Lee Bollinger complaining about the violation of the plaintiff's rights and suggesting a settlement.

10) The science establishment in the United States disseminates the misinformation that *human beings* evolved from animals. The truth is that *homo sapiens* evolved from animals. Homo sapiens are hypothetical creatures that lack free will and the conscious knowledge of human beings as opposed to the sense knowledge of animals.[3 and 4]

11) Many philosophers in the United States disseminate misinformation about the cosmological argument for God's existence. The only version of the cosmological argument that makes sense is based on the scientific fact that human beings did not evolve from animals. This argument, which is from Thomas Aquinas as explained by Etienne Gilson,

assumes that the universe is intelligible and that human beings are finite beings. From these assumptions, it can be argued that an infinite being (*God*) exists. [5 and 6]

12) The misinformation in 10) and 11) has the effect of promoting the religion called *humanism*. The defendants are unlawfully promoting this religion by using the New York State Unified Court System to prevent the plaintiff from contacting the Columbia U. community about the arguments for God's existence.

13) Wherefore, the plaintiff is asking this court to issue an injunction that will protect the plaintiff's right to free speech and enforce the Establishment Clause.

1) Dear David, thank you for courageous and intelligent fight against bad arguments for God's existence! Your lesson plan is well done! Best wishes for the new year, Vittorio (Email from Vittorio Hösle, Notre Dame U., 12/29/16)
2) Dear Dr. Roemer, Thank you for the opportunity to read your essay, "Why People Believe God Caused the Big Bang." It is well crafted and I am sure would command an appreciative audience. Unfortunately, given its present commitments, the *Review* is not in a position to accept it. (Letter from John McCarthy, Editor of *The Review of Metaphysics*, 1/8/16, https://www.academia.edu/23340072/WHY_PEOPLE_BELIEVE_GOD_CAUSED_THE_BIG_BANG)
3) And certain properties of the human brain distinguish our species from all other animals. The human brain is, after all, the only known collection of matter that tries to understand itself. To most biologists, the brain and the mind are one and the same; understand how the brain is organized and how it works, and we'll understand such mindful functions as abstract thought and feelings. Some philosophers are less comfortable with this mechanistic view of mind, finding Descartes' concept of a mind-body duality more attractive. (Neil Campbell and Jane Reece, *Biology*, 4th edition, p. 776)
4) Catholics could believe whatever science determined about the evolution of the human body, so long as they accepted that, at some time of his choosing, God had infused the soul into such a creature. I also knew that I had no problem with this statement, for whatever my private beliefs about souls, science cannot touch such a subject and therefore cannot be threatened by any theological position on such a legitimately and intrinsically religious issue. (Stephen Jay Gould, Natural History, March 1997, 13th paragraph)
5) https://plato.stanford.edu/entries/cosmological-argument
6) https://en.wikipedia.org/wiki/Cosmological_argument

Signed,
*David Roemer*
David Roemer, pro se,
345 Webster Ave., Apt. 4-O, Brooklyn, NY 11230
Dated this 13th day of February, 2017

# EXHIBIT B

Date: Thu, 22 Sep 2016 16:16:22 -0400
From: David Roemer <david@dkroemer.com>
To: skg56@columbia.edu, Bollinger, Lee <officeofthepresident@columbia.edu>

Dear Mr. Bollinger,
I am a retired New York City high school teacher, and I'd like to give the students and faculty of Columbia University a learner-centered lesson on the arguments for God's existence. I'v attached the hand-out I would use. My ideas about the topic are expressed in the following article.

https://www.academia.edu/23340072/WHY_PEOPLE_BELIEVE_GOD_CAUSED_THE_BIG_BANG

On Sept. 15, I communicated this offer to the University Chaplain in an email. There was no response to this email, however, I got a call from your Department of Public Safety and met with Deidre Fuchs and a member of her staff in Low Library this afternoon. Ms. Fuchs told me that Chaplain Davis was not interested in sponsoring such an event. Ms. Fuchs also said that Chaplain Davis discussed the matter with all of the Religious Life Advisors on her staff and that no one was interested in my offer. Ms. Fuchs also told me that I would be guilty of harassment if I contacted the Religious Life Leaders with my offer. I understand this to be a threat to file a civil or criminal charges against me if send emails, write letters, or telephone the various Religious Life Advisors with my offer. I am writing to warn you that any legal action taken against me for contacting the members of the Religious Life Advisors will be result in a civil action by me against Columbia U.

1

I was also warned not to contact again two undergraduates I sent emails to on March 16, Aug. 13, and Aug. 20. This matter concerns you directly, I believe, because I have communicated about this matter to James Valentini and Matthew Patashnick to no avail.

On March 16, I sent emails to the two co-Presidents of the Catholic Campus Ministry offering to give my lesson. The only response I got was from Fr. O'Reilly who said, "If you contact them again, you will hear from our Safe Environment lawyers who deal with the endangerment and entrapment of minors." I am concerned that the content of my email and Fr. O'Reilly's irrational behavior scandalized the undergraduates. I told Cardinal Dolan about my concerns, but to my knowledge, Cardinal Dolan has done nothing to make sure the students understand the reasons for believing in God and the arguments for God's existence. I believe Msgr. Paddack is the student's pastor. I am asking you to ask Msgr. Paddack to make sure he is carrying out his priestly responsibilities.

My correspondence with the Archdiocese of New York is here:
http://www.newevangelist.me
Very truly yours,
David Roemer
347-414-2285

# A Developmental Lesson on the Arguments for the Existence of God

## What Is a Developmental Lesson?

**Lecturing is not a good way for anyone to learn. Students learn best if they are given an opportunity to create their own knowledge by answering questions and discussing the aim of the lessons in a group. What follows can be used as a handout in a lesson explaining the arguments for God's existence.**

1. The human mind is structured like the scientific method. At the lowest level is making observations. The next level is asking questions about the observations and inventing answers. The third level is gathering evidence and deciding whether an answer is true or just probable. The fourth level is deciding what to do with our bodies. Making observations requires paying attention. What do the other three levels require?

2. What are the observations that lead to our knowledge of God's existence?

3. What are the questions that the observations in your answer to question #2 should cause an intelligent person to ask?

4. What is wrong with this quote from an atheist about the mind-body problem: "Among the traditional candidates for comprehensive understanding of the relation of mind to the physical world, I believe the weight of evidence favors some from of neutral monism over the traditional alternatives of materialism, idealism, and dualism." (Thomas Nagel, *Mind and Cosmos: Why the Materialist Neo-Darwinian Conception of Nature Is Almost Certainly False*, location 69 of 1831)

1

5. What is wrong with this quote from a biology textbook about the mind-body problem: "And certain properties of the human brain distinguish our species from all other animals. The human brain is, after all, the only known collection of matter that tries to understand itself. To most biologists, the brain and the mind are one and the same; understand how the brain is organized and how it works, and we'll understand such mindful functions as abstract thought and feelings. Some philosophers are less comfortable with this mechanistic view of mind, finding Descartes' concept of a mind-body duality more attractive." (Neil Campbell, *Biology*, 4th edition, p. 776 )

6. What is wrong with this quote from a Catholic philosopher about the mind-body problem: "Acts of self-consciousness (awareness of awareness) are difficult to explain through regular space-time models (one act of awareness capturing itself, as it were)." (Robert Spitzer, *New Proofs for the Existence of God: Contributions of Contemporary Physics and Philosophy*, 2010, location 2211).

7. What is wrong with this quote from a Catholic physicist about the mind-body problem: "However, having started with the empirically quite unsupported postulate of atheism, the materialists is practically forced to call a variety of empirical facts 'illusions'—not facts that are in front of his eyes, but are behind his eyes, so to speak, facts about his own mind....None of this is to deny that there are some very hard questions that arise from the idea that the human mind is not entirely reducible to matter. There certainly are. For instance, if there is something immaterial about the mind, how does it affect the brain and body?" (Stephen M. Barr, *Modern Physics and Ancient Faith*, 2003, location 4612)

8. Why are human beings superior to animals?

9. Why are human beings equal to one another?

2

10. How can two humans be different from one another and at the same time equal to one another?

11. What is a human being?

12. Bishop George Berkeley (1685 to 1753) was sitting on a rock and contemplating the universe. He figured he existed because God created him. Berkeley then realized that the rock did not know it existed. Why did God create the rock? Berkley figured God created the rock so Berkeley would have a place to sit. But God has infinite power, so God could just as easily create the illusion that the rock exists in Berkeley's mind as the rock itself. The philosophy that the material world is an illusion is called *idealism*. Why is idealism wrong?

13. What is the significance for the arguments for God's existence of the fact that other human beings exist?

14. What is a *final cause*?

15. What is causality in physics?

16. What is causality in metaphysics?

3

17. What is the difference between causality in physics and causality in metaphysics?

18. Why does a finite being need a cause?

19. What can cause a finite being?

20. Can there be an infinite regression of finite beings: A is caused by B, B is caused by C, and so on?

21. What is the argument for the existence of God based on the existence of finite beings?

22. Why is the argument based on finite beings not a proof of God's existence?

23. What is the other argument for the existence of God?

4

# EXHIBIT C

# COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

OFFICE OF THE GENERAL COUNSEL

October 13, 2016

**By Email**

Dear Mr. Roemer,

I am following up on your phone conversation with Deidre Fuchs yesterday. Please cease communicating with the members of the Columbia community. If you continue to reach out to the member of the community, further contact could be perceived as harassment.

If you have any further questions or concerns, you can contact Executive Director Fuchs. Thank you in advance for your cooperation with this matter.

Sincerely,

Jane E. Booth /eac
Jane E. Booth
General Counsel

JEB:eac

208984